IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ELVIS RAMON GREEN BERRIOS,

    Plaintiff,

v.

SIG SAUER, INC.,

    Defendant.

Civil Action No.: 3:22-CV-01002-JAG

**STATEMENT OF UNCONTESTED MATERIAL FACTS**

**TO THE HONORABLE COURT:**

    **COMES NOW,** Defendant, Sig Sauer, Inc. ("Sig Sauer"), through the undersigned attorneys, and respectfully submits the following:

**Statement of Uncontested Material Facts (SUF)**

**The Incident**

1. Plaintiff claims he was injured on January 6, 2021 when his Puerto Rico Police Department (PRPD)-issued Sig Sauer P320 pistol discharged without the trigger being pulled. *See* Pl's Compl. ¶ 18 (Dkt. 1).

2. The incident occurred in the evening after Plaintiff returned home from a family party. Green Berrios Dep. (Vol. I) at 42:11-43:17 (**attached as Exhibit 1**).

3. Plaintiff consumed several beers prior to the incident. *Id.*

4. Officer Humberto Sullivan of the PRPD reported to the scene of Plaintiff's accident. Sullivan Dep. at 19:15-22:20 (**attached as Exhibit 2**).

5. Officer Humberto testified that when he asked Plaintiff what happened, Plaintiff said "[t]hat he had shot himself." *Id.* at 22:16-20.

6. Officer Ramiro Fuentes of the PRPD reported to the scene of Plaintiff's accident. Fuentes Dep. at 16:22-17:13 (**attached as Exhibit 3**).

7. Officer Fuentes testified that Plaintiff stated, "I shot myself unintentionally." *Id.*

8. Officer Fuentes testified that Plaintiff stated that he heard a noise and went outside of the house to investigate with his pistol in his hand. *Id.*

9. EMT Iris Rivera reported to the scene of Plaintiff's accident. Rivera Dep. at 16:9-17:2 (**attached as Exhibit 4**).

10. EMT Rivera testified that Plaintiff stated, "I am a police officer and I accidentally shot myself with my pistol." *Id.*

11. Officer Francisco Alvarez of the PRPD spoke with Plaintiff after the incident while Plaintiff was in the hospital. Alvarez Dep. at 13:15-23; 15:4-17 (**attached as Exhibit 5**).

12. Plaintiff told Officer Alvarez that the discharge occurred when he "put his finger where it wasn't supposed to." *Id.*

13. On March 4, 2021, Officer Geovon Ortiz, an investigator with the PRPD's Force Investigation Unit (FIU), interviewed Plaintiff regarding the incident. G. Ortiz Dep. at 23:8-23; 44:21-45:6 (**attached as Exhibit 6**).

14. Plaintiff told Officer Ortiz that the discharge occurred when he took his holstered pistol out of his pocket.; *Id.* at 51:1-21; FIU Report by G. Ortiz (Certified Translation) at p. 4-6 (**attached as Exhibit 7**).

15. This was the first time Plaintiff mentioned the presence of a holster in describing the incident to the PRPD. G. Ortiz Dep. at 44:21-24 (Ex. 6).

16. Officer Jose Sanchez, head armorer for the PRPD, examined and tested Plaintiff's pistol and determined that there was no evidence of any defects that would cause it to discharge

without a trigger pull. *See* Inspection Report (Certified Translation) (**attached as Exhibit 23**); Sanchez Dep. at 43:5-44:15 (**attached as Exhibit 8**).

17. The PRPD FIU determined that Plaintiff violated department safety protocols and that he "negligently put his finger on the trigger, which caused his service weapon to fire." FIU Report, Negligent Critical Discharge Incident (Certified Translation) at p. 3 (**attached as Exhibit 24**).

18. Plaintiff testified at his deposition that the discharge occurred when he placed his hand on his holstered pistol in his waistband. Green Berrios Dep. (Vol. I) at 47:18-48:10 (Ex. 1).

**Plaintiff's Holster**

19. Plaintiff never provided the holster he claims was involved in the accident to the PRPD. G. Ortiz Dep. at 44:17-20 (Ex 6).

20. The police who responded to the incident searched the scene, including the surrounding green areas, for physical evidence, and did not find a holster. *See* Fuentes Dep. at 34:20-35:6 (Ex. 3).

21. Plaintiff's father, Ramon Ortiz, who lives with Plaintiff, testified that he found the holster in the bushes close to where the incident occurred the morning after the incident. R. Ortiz Dep. at 10:7-17; 19:11-20:15 (**attached as Exhibit 9**).

22. Mr. Ortiz testified the holster was bloodied and damaged when he found it. *Id.* at 20:16-22:10; 32:10-33:17.

23. Mr. Ortiz testified that he placed the holster in the state in which he found it on a table in the house where the television sat. *Id.*

24. Mr. Ortiz testified that the holster remained on the television table for over a year until Plaintiff returned it to the PRPD. *Id.*

25. Plaintiff's fiancé, Arelis Ortiz, who moved in with Plaintiff and his father one month after the incident, testified she did not recall seeing a holster anywhere in the house until Plaintiff was re-issued his firearm by the PRPD. A. Ortiz Dep. at 39:6-40:4 (**attached as Exhibit 10**).

26. Plaintiff testified that on March 14, 2022, when the PRPD returned to him the P320 service-pistol that was involved in the accident, he turned over to the PRPD the holster he was wearing at the time of the accident. *See* Green Berrios Dep. (Vol. II) at 9:22-10:5 (Ex 1).

27. Plaintiff testified he received no receipt related to his return of the holster and has not seen the holster since that day. *See id.* at 10:6-11.

28. Sgt. Mario Reyes, Director of the PRPD's Weapons Depository as of March 14, 2022, testified that Plaintiff could only have turned in a holster at the "Service"/"Duty" counter in the Weapons Depository, and that Weapons Depository policy requires issuance of a written receipt for all holsters turned in, without exception, as well as logging of the return in the depository's records. *See* Reyes Dep. at 12:8-13:2; 16:10-19:6 4 (**attached as Exhibit 11**).

29. Sgt. Reyes checked the depository's records and confirmed that they have no record of Plaintiff turning in a holster. *Id.* at 24:21-25:13.

30. Officer Ivan Cruz, who was working the Weapons Depository's "Service"/"Duty" at that time, testified that Plaintiff did not turn in a holster on March 14, 2022 based on the written documentation maintained by the depository. *See* Cruz Dep. at 52:4-9 (**attached as Exhibit 12**).

31. Sig Sauer's firearm design and engineering expert, Derek Watkins, performed a simulated bullet trajectory and determined that the results of that analysis contradict the possibility of the pistol discharging while in the holster inside Plaintiff's waist band. *See* Watkins Rpt. at p. 19 (**attached as Exhibit 13**).

**Hicks' Lack of Qualifications**

32. Plaintiff disclosed a report prepared by his sole liability expert, Timothy M. Hicks. *See* Hicks Rpt. (**attached as Exhibit 14**).

33. Hicks is a mechanical engineer who spent the majority of his career in the automotive industry and/or analyzing automotive component parts. *See* Hicks CV (**attached as Exhibit 15**); Hicks Dep. in *Green Berrios* at 99:21-100:2 (**attached as Exhibit 16**); Hicks Dep. in *Hilton* at 21:17-22:8 (**attached as Exhibit 17**).[1]

34. Hicks has never worked for a company that designed or manufactured firearms. Hicks Dep. in *Green Berrios* at 103:8-10 (Ex. 16).

35. Hicks has never designed or manufactured a firearm, nor has he designed or manufactured a component used in a firearm. *Id.* at 102:11-18.

36. Hicks has never toured a firearm manufacturer's plant, nor has ever seen a firearm manufactured or assembled. Hicks Dep. in *Hilton* at 142:3-13 (Ex. 17).

37. Hicks has never published any articles (peer reviewed or otherwise) on firearm design or manufacturing, nor has he ever given a presentation on either topic. Hicks Dep. in *Green Berrios* in 104:1-10.

38. Hicks is not a member of any committees or professional organizations that develop firearm testing standards. *Id.* at 104:11-14.

39. Hicks is not a gunsmith, nor has he ever taken any gunsmithing courses. *Id.* at 103:6-7; Hicks Dep. in *Hilton* at 140:22-141 (Ex. 17).

---

[1] Hicks has provided the same opinions in multiple cases. For purposes of efficiency, testimony regarding his training and experience as well as the foundational aspects of his opinions has not been repeated at each deposition, even though it applies equally to his opinions in each case.

40. Prior to being retained in connection with litigation involving the P320, Hicks had never inspected a P320 pistol, nor had he inspected the internal components or design drawings of a pistol similar to the P320. Hicks Dep. in *Green Berrios* at 93:4-7; 103:17-24 (Ex. 16); Hicks Dep. in *Hilton* at 141:11-19 (Ex. 17).

41. Hicks is certified for testing firearms for the states of California and Massachusetts. *See* Hicks CV (Ex. 15).

42. To obtain these certifications, Hicks needed the agency to inspect his facilities, watch him test a firearm, and comply with its reporting process. *See* Hicks Dep. in *Mayes* at 56:14-57:2 (**attached as Exhibit 18**).

43. The testing Hicks performs consists primarily of a "basic function test" and a drop test. *See* Hicks Dep. in *Hilton* at 43:22-45:15 (Ex. 17); Hicks Dep. in *Green Berrios* at 68:17-69:3 (Ex. 16).

44. In connection with this testing, Hicks reports whether the pistols fire properly or not and does not provide any analysis on the design of the firearms. *See* Hicks Dep. in *Mayes* at 57:18-58:14 (Ex. 18).

45. Hicks has never tested a P320 model pistol for compliance with the California or Massachusetts standards. *See* Hicks Dep. in *Hilton* at 142:17-22 (Ex. 17); Hicks Dep. in *Green Berrios* at 6:15-7:4 (Ex. 16).

**Hicks' Work and Opinions**

46. Hicks opines that Plaintiff's P320 discharged without a trigger pull. *See* Hicks Rpt. at 4 (Ex. 14).

47. Hicks agrees that the P320 is designed to and will discharge upon the trigger being pulled, whether intentionally or unintentionally, irrespective of whether the pistol has the alleged manufacturing defects he identifies. Hicks Dep. in *Green Berrios* at 122:4-9; 116:20-24 (Ex. 16).

48. Hicks claims "several defects" are present in Plaintiff's P320, and every P320 pistol he has inspected, that could cause the pistol to discharge without a trigger pull. *See* Hicks Rpt. at 4 (Ex. 14).

49. Hicks has not performed any physical testing to confirm his theory that the P320 can discharge without a trigger pull. Hicks Dep. in Green Berrios at 50:8-18; 126:1-15 (Ex. 16).

50. Hicks has never witnessed a P320 pistol fire without a trigger pull. *See* Hicks Dep. in *Hilton* at 158:24-159:9 (Ex. 17).

51. Hicks testified that his theory has been replicated through other "similar incidents" of accidental discharges involving P320 pistols. Hicks Dep. in *Green Berrios* at 51:19-57:7 (Ex. 16).

52. However, Hicks has no knowledge as to whether the other incidents he relies upon involved discharges without a trigger pull. *Id.*

53. Hicks has not attempted to test his theory because he believes such testing is not practical. *See* Hicks Dep. in *Green Berrios* at 43:4-46:48:14; 161:9-16; 173:19-174:5; 175:1-6; 40:18-23 (Ex. 16).

54. Hicks believes that testing his theory is impractical because he does not know how to replicate the real-world conditions under which a P320 will discharge without a trigger pull. *Id.*

55. Hicks discounts drop testing and other abusive handling testing of the P320 conducted by Sig Sauer because he does not believe it accurately reflects whether a P320 will discharge without a trigger pull. *Id.* at 40:7-17; 56:23-57:7

56. Hicks opines that in order for the P320 to fire without a trigger pull, at least two defects must be present, and those defects must override two independent internal safeties within the P320. Hicks Dep. in *Green Berrios* at 163:11-164:10. (Ex. 16)

57. Hicks opines that the striker foot first has to "walk off"—or disengage—from the sear without the trigger being pulled. *Id.*

58. Hicks opines that second, the striker safety lock must jump over the striker stop. *Id.*

59. Hicks has not tested either of these two theories, nor has he made any calculations or measurements sufficient to show either alleged defect will manifest in real life. Hicks Dep. in *Green Berrios* at 43:4-11 (Ex. 16); *see also* Hicks Dep. in *Hilton* at 149:14-18; 150:7-12 (Ex. 17).

60. Hicks does not know what allegedly caused these two independent internal safeties to be overridden in this case to cause Plaintiff's pistol to discharge. *See* Hicks Dep. in *Green Berrios* at 164:11-165:10 (Ex. 16).

61. Hicks does not know how much force must be applied to the pistol or how long the pistol must be carried for his alleged defects to manifest into a discharge without a trigger pull. Hicks Dep. in *Green Barrios* at 7:22-8:1; 160:20-23 (Ex. 16); Hicks Dep. at *Hilton* at 151:3-152:12 (Ex. ).

62. Hicks does not know whether the supposed disengagement of the sear and striker foot would occur all at once or incrementally over time. Hicks Dep. at *Hilton* at 151:3-152:12 (Ex. 17).

63. Hicks has not conducted any testing, modeling, or analysis to determine the effect of the alleged defects on the operation of the P320. Hicks Dep. in *Green Berrios* at 7:8-21 (Ex. 16); *see also* Hicks Dep. in *Hilton* at 50:17-19; 80:4-81:2; 83:16-85:15; 86:17-87:9; 103:12-104:4 (Ex. 17).

64. Hicks has not measured the forces it would take, measured how the parts are capable of interacting with each other, and/or if there is even room within the pistol for the parts to move in the manner he describes. Hicks Dep. in *Hilton* at 148:12-152:16 (Ex. 17).

65. Hicks did not review the deposition testimony of any of the officers who investigated the scene. Hicks Dep. in *Green Berrios* at 121:14-21 (Ex.16).

66. Hicks did he consider physical evidence demonstrating that Plaintiff's current claim that his pistol was holstered at the time of the discharge is implausible. *Id.* at 147:10-148:22; Watkins Rpt. at p. 17-21 (Ex. 13).

67. Hicks has been precluded from testifying regarding his theory that the P320 pistol can, and did, fire without a trigger pull in three other federal court cases. Memorandum Opinion & Order, *Jinn v. Sig Sauer*, No. 1:20-cv-01122 [ECF 78] (S.D.N.Y. Sept. 13, 2023) (**attached as Exhibit 19**); Report and Recommendation of Magistrate Judge, *Jinn v. Sig Sauer*, No. 1:20-cv-01122 [ECF 75] (S.D.N.Y. Apr. 12, 2023) (**attached as Exhibit 20**); Memorandum Opinion and Order, *Hilton v. Sig Sauer, Inc.*, No. 1:21-CV-00441 [ECF 65] (E.D. Tx. June 8, 2023) (**attached as Exhibit 21**); Memorandum Opinion and Order, *Mayes v. Sig Sauer, Inc.*, No. 1:19-CV-00146 [ECF 89] (W.D. Ky. Mar. 30, 2023) (**attached as Exhibit 22**).

68. Hicks still has not performed any testing of any P320 model pistol. *See* Hicks Dep. in *Hilton* at 50:17-19; 80:4-81:2; 83:16-85:15; 86:17-87:9 103:12-104:4 (Ex. 17).

69. Hicks has not done anything to address the deficiencies in his methodology raised by the courts in *Jinn, Hilton,* or *Mayes*. Hicks Dep. in *Green Berrios* at 39:22-40:4 (Ex 16).

**WHEREFORE,** it is requested that considering the above, the Court deem the above proposed material facts uncontested and GRANT summary judgment accordingly.

## CERTIFICATE OF SERVICE

We hereby certify that on this date, we electronically filed the foregoing document with the CM/ECF system which will send notification of such filing to all counsel who have filed appearances in this case.

**RESPECTFULLY SUBMITTED**,

In Guaynabo, Puerto Rico on this 27th day of September, 2023.

**Marichal, Hernández, Santiago & Juarbe, LLC**
Edificio Triple S Plaza
1510 Ave FD Roosevelt, Suite 9B1
Guaynabo, PR 00968

PO Box 190095
San Juan, PR 00919-0095
Tel 787.753.1565
Fax 787.763.1704

*s/Miguel A. Rangel Rosas*
**Miguel A. Rangel-Rosas, Esq.**
USDC Bar No.:  215601
E-Mail: mrangel@mhlex.com

**Luis F. Juarbe-Jiminez, Esq.**
USDC Bar No.,: 212714
E-Mail: lfjuarbe@mhlex.com

Kristen E. Dennison
Brian Keith Gibson
Robert L. Joyce
**LITTLETON PARK JOYCE UGHETTA & KELLY, LLP**
4 Manhattanville Road, Suite 202
Purchase, NY 10577
Tel: (914) 417-3400
Fax: (914) 417-3401
kristen.dennison@littletonpark.com
keith.gibson@littletonpark.com
robert.joyce@littletonpark.com