IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELVIS RAMON GREEN BERRIOS,<br><br>Plaintiff,<br><br>v.<br><br>SIG SAUER, INC.,<br><br>Defendant. | Civil Action No.: 3:22-CV-01002-JAG |

**SIG SAUER, INC.'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION**

Defendant Sig Sauer, Inc. ("Sig Sauer"), though the undersigned counsel, pursuant to Federal Rule of Civil Procedure 72(b), Local Rule 72(d)[1] and 28 U.S.C. § 636(b)(1)(C), files these Objections to the Magistrate Judge's Report and Recommendation dated February 27, 2024 recommending that Sig Sauer's motion *in limine* to exclude the testimony and opinions of Plaintiff's expert, Timothy Hicks be denied [Doc. 86] ("RAR").

Under Fed. R. Civ. Proc. 72(b) and Local Rule 72(d), within fourteen days of being served with a magistrate's proposed findings and recommendations, a party may file specific written objections which identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection. "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. Proc. 72(b)(3). Sig Sauer's objections are timely made and comply with these requirements.

---

[1] Sig Sauer files these Objections pursuant to Fed. R. Civ. Proc. 72(b) and Local Rule 72(d), which apply to dispositive motions, because the RAR states that it is filed pursuant to Local Rule 72(d). *See* RAR at p. 15. However, regardless of whether the Court applies Fed. R. Civ. Proc 72(a) as opposed 72(b), or Local Rule 72(c) as opposed to 72(d), Sig Sauer's Objections are timely made, and the the portions of the RAR objected to herein are clearly erroneous or contrary to law and, therefore, should be set aside under any applicable standard.

**OBJECTIONS**

I. **The RAR incorrectly concludes that Hicks is broadly qualified to testify based on his mechanical engineering background but fails to consider that he lacks any experience relevant to his specific opinions on the internal workings of the P320.**

The Magistrate erred in broadly considering Hicks' qualifications as a mechanical engineer rather than viewing them in connection with the specific design defect opinions Hicks seeks to offer in this case. The RAR concludes that Hicks is qualified to testify regarding defects in the P320 despite not having specific experience in firearm manufacturing and design because "an expert is not precluded from offering an opinion simply because he has no specific experience in the design or manufacturing of the product at issue." *See* RAR at p. 8-9. First, there is clear precedent in this district which contradicts the Magistrate's finding that specific experience with the subject product is not required. *See Muniz Negron v. Worthington Cylinder Corp.*, No. CV 17-1985 (RAM), 2021 WL 1199014, at *11 (D.P.R. Mar. 30, 2021) (mechanical engineer who lacked knowledge, skill, experience, training or education in design and manufacture of propane gas cylinders and propane gas vales was unqualified to testify about defects in those products).

Second, even putting aside this authority which was overlooked by the RAR, the RAR also fails to consider that Hicks' complete lack of experience with the design of the internal components of firearms is uniquely and fatally problematic here because Hicks seeks to opine, without having done any testing, calculations, or other scientific analysis, that the P320 can discharge without a trigger pull based entirely on his observations of the pistol ***and his purported experience***. In fact, as discussed below, Hicks expressly relies on his "experience" alone for his opinion that alleged deviations from specification in certain internal components of the P320 can cause the pistol to discharge without a trigger pull. Hicks Dep. at 178:12-179:1 [Doc. 53-16]. Hicks cannot possibly opine "from experience" as to how these internal components will interact because he admittedly

2

lacks any experience related to the manufacture or design of firearms or firearm components. *See id.* at 103:8-10; 102:11-18. In sum, the reliability of Hicks' opinions in this case is highly dependent on his level of expertise with the internal workings of a firearm. Because this is precisely the type of experience Hicks, by his own admission, utterly lacks, he is not qualified to render those opinions. As such, the Court should decline to adopt that portion of the RAR which addresses Hicks' qualifications.

II.  **The RAR fails to consider that Hicks' discharge without trigger pull hypothesis is not only untested and un-replicated, but is not supported by *any* calculations, modeling, or other scientific analysis and lacks any indicia of reliability under any of the *Daubert* factors.**

The Magistrate erred in finding that the absence of testing and replication do not render Hicks' testimony inadmissible because, according to the RAR, Hicks' opinions still rest on a reliable foundation. RAR at p. 12-13. While it is true that Hicks has not performed any testing and that his discharge without trigger pull theory has never been replicated either by himself or anyone else, Sig Sauer's challenge to the reliability of Hicks' opinions is ***not***, as the RAR suggests, based solely on the lack of physical testing (which in itself is inexcusable), but rather, on Hicks' failure to validate or substantiate his hypothesis with ***any testing, calculations, computer modeling, force measurements, replication, or other scientific analysis.*** Following the amendments to Rule 702, the First Circuit recently clarified that "the present version of the rule establishes that expert testimony may be admitted into evidence only if it is 'based on sufficient facts or data,' is 'the product of reliable principles and methods,' and 'reflects a reliable application of the principles and methods to the facts of the case.'" *Rodriguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70 (1st Cir. 2024) (citing Fed. R. Evid. 702). Hicks' opinions, which amount to no more than a bare hypothesis, clearly do not satisfy these criteria.

The RAR focuses almost exclusively on Hicks' failure to conduct physical testing but fails to consider that Hicks lacks any other reliable foundation for his opinions. In other words, while *physical* testing might not be an absolute prerequisite to admissibility, here Hicks fails to support his hypothesis—that certain internal components of the P320 which he claims are out of specification can or did cause the pistol to discharge without a trigger pull—with **any** form of substantiation despite his own admission that the scientific method requires testing of a hypothesis. *See* Hicks Rpt. at p. 18 [Doc. 53-14] ("The scientific method template can involve the following steps: a. Collection of data, b. Analyze the data, c. Development of hypothesis, d. **Testing of the hypothesis**, e. Formation of conclusions if the test proves the hypothesis valid or ruled out if not valid") (emphasis added); Hicks Dep. at 42:3-18 [Doc. 53-16].

According to Hicks, in order for the P320 to fire without a trigger pull, (at least) two defects must be present, and those defects must override two independent internal safeties within the P320. Hicks Dep. at 163:11-164:10 [Doc. 53-16]. First, the striker foot has to "walk off"—or disengage—from the sear without the trigger being pulled. *Id.* Second, the striker safety lock must jump over the striker stop. *Id.* Hicks' opinions end there. He simply assumes these events can and did occur to cause the pistol to discharge, but does not know, and did not try to determine, if in fact either of these events can actually occur as a result of the alleged defects he identified. In fact, **Hicks has not even calculated the force required to break the sear-striker connection without a trigger pull or done any calculations to indicate the amount of inertia required to disengage the sear and the striker.** *Id.* at 7:22-8:1; 177:15-20. Because Hicks relies on nothing but his *ipse dixit* for the conclusion that the purported deviations from specifications he identified can or did manifest to cause a discharge without a trigger pull, his hypothesis remains purely hypothetical. There is simply no authority to support the RAR's conclusion that even a well-developed

4

hypothesis (which Hicks' decidedly is not), without more, satisfies Rule 702. *See Rodriquez*, 91 F.4th at 70 (quoting *Daubert*, 509 U.S. at 590, 113 S. Ct. 2786) ("*Daubert* made clear that to be admissible under Rule 702, an expert's opinion 'must be supported by appropriate validation' and rest on 'more than subjective belief or unsupported speculation.'").

Courts throughout the First Circuit agree that where an expert fails to validate his or her hypothesis, despite having the opportunity to do so, the experts' opinions based on that untested and unvalidated hypothesis are "not reliable and should not reach the jury." *Muniz Negron v. Worthington Cylinder Corp.*, No. CV 17-1985 (RAM), 2021 WL 1199014, at *12 (D.P.R. Mar. 30, 2021); *Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 24-25 (1st Cir. 2006) (upholding the exclusion of an engineering expert's opinions regarding the existence of manufacturing defects in a ladder where he "did not conduct any testing" and could not identify any "literature that supported his opinion"); *Brown v. Wal-Mart Stores, Inc.*, 402 F.Supp.2d 303, 310 (D. Maine 2005) (excluding expert for failure to conduct any expert analysis of a snap rail, what forces it will withstand, and whether it would have prevented the accident); *St. Laurent v. Metso Minerals Indus., Inc.*, 2005 WL 2277058, at *7-8 (D.N.H. Sept. 13, 2005) (holding that an expert's opinion was not "the product of reliable principles and methods as required under Federal Rule of Evidence 702" where he "did not create any prototypes of his alternative design, or do any testing to support his alternative design theory, which is perhaps the most important *Daubert* factor."). *Thorndike v. DaimlerChrysler Corp.*, 266 F. Supp. 2d 172, 176 (D. Maine 2003) (holding that an expert's failure to test the lateral force tolerance of bolts rendered his opinion unreliable and inadmissible); *BASF Corp. v. Sublime Restorations, Inc.*, 880 F. Supp. 2d 205, 214 (D. Mass. 2012) (excluding an expert's opinion that an automotive paint manufacturer's products failed to match the color decks

it provided because the expert relied on his own visual inspection and not a testing procedure capable of being repeated).

Despite the critical role testing plays in demonstrating the reliability of an expert's hypothesis regarding an alleged defect in a product, Hicks has done ***no testing, calculations, computer modeling, force measurements, replication, or other scientific analysis*** to confirm or support his hypothesis that alleged excess material or out-of-specification parts will cause the P320 pistol to discharge without a trigger pull. Hicks Dep. at 6:20-8:1; 42:8-43:11 [Doc. 53-16]. These are the exact circumstances that led the United States District Court for the District of Maine to exclude the plaintiff's expert in *Brown v. Wal-Mart Stores*, 402 F.Supp. 2d 303 (1st Cir. 2005). In *Brown*, the plaintiff alleged she was injured while walking down a store aisle when she was hit by Matchbox trucks that fell off a shelf. *Id.* at 305. She sought to introduce expert testimony from an engineer that the Matchbox trucks were improperly stored and displayed and were not stacked in a stable enough manner to withstand being bumped. *Id.* at 305-306. In excluding the expert's testimony, the court found that, *inter alia,*:

> [The expert] offers no expert analysis of what a snap rail is, what forces it will withstand, and whether a snap rail would have prevented the accident. There are no calculations of the weight and size of the Matchbox truck box, the weight and size of the shelving, the nature and strength of the shelf's attachment to the floor, the number of boxes on the shelf at the time of the incident, the precise result of force on a loaded shelf, the degree to which different forces would cause the shelving to move—either at the bottom or top of the shelving, or the trajectory of the box with and without a snap rail. [The expert's] opinion is precisely the type of *ipse dixit* expert testimony the *Daubert* trilogy intended to eliminate.

*Id.* at 310.

As in *Brown*, Hicks' failure to: (1) measure the forces the sear and striker connection and/or the striker safety lock can withstand before failing, (2) calculate the amount of deviation in specifications and other alleged defects required to lead to failure of the engagement of sear and

striker connection and/or the striker safety lock, (3) test whether the sear and striker connection and/or the striker safety lock will fail to maintain engagement in light of the alleged defects in the components, (4) replicate a P320 discharge without a trigger pull, or (5) otherwise scientifically validate his theory render his opinions nothing more than subjective belief and unsupported speculation and is a paradigm example of there being "simply too great an analytical gap between the data and the opinion proffered." *Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 98 (1st Cir. 2020).

Although there may be situations where a hypothesis need not be validated by *physical* testing, Rule 702 still requires that expert witnesses "adhere to the same standards of intellectual rigor that are demanded in their professional work," which may be accomplished through "the review of experimental, statistical, or other scientific data generated by others in the field." *Muniz*, 2021 WL 1199014, at *12 (internal quotation marks and citations omitted). For this reason, expert opinions are properly excluded where an expert who has done no physical testing has also failed to validate his opinions through other means such as calculations or modeling. *Id.* (citing *Mutersbaugh v. Gen. Elec., Inc.,* 2019 WL 1409379 (N.D. Ohio 2019), appeal dismissed, 2019 WL 8631808 (6th Cir. 2019)). "This is because '[w]hile there is no one right way to achieve scientific or technical validity in the analytical process, [...] the failure of [the experts] to engage in testing of critical aspects of their hypothesis undermines the validity of their resulting [theory] of causation.' *Id.* (citing *Stibbs v. Mapco, Inc*., 945 F. Supp. 1220, 1223–24 (S.D. Iowa 1996)).

The RAR erroneously concludes that Hicks' opinions are based on more than his *ipse dixit* because he inspected the pistol, conducted CT scans and microscopic imaging, took measurements of the internal components of the firearm and compared them to the design specifications. *See* RAR at p. 12-13. However, in reaching this conclusion, the Magistrate conflated the steps Hicks

took *to develop his hypothesis* with *validation* of that hypothesis, both of which Hicks admits are required steps under any sound scientific methodology. Put simply, Hicks cannot, nor has he attempted to, connect the dots between opining as to a theoretical interaction between component parts and establishing that an *actual* interaction of those parts can occur in the manner predicted and will result in a discharge without a trigger pull.

In fact, when asked the basis of his opinion that the purported out-of-specification parts he identifies in the P320 will cause the pistol to discharge without a trigger pull, Hicks responded that this opinion is based entirely on his experience designing parts for *vehicles* as part of the manufacturing process to meet federal regulations:

> Q….I mean, you don't have any calculations that show that it is something more than theoretically possible for this P320 pistol to discharge without a trigger pull; is that correct?
>
> A. More likely than not it is occurring because of the defects I have identified.
>
> Q. And that is based entirely on your theoretical analysis?
>
> A. From a reasonable degree of engineering certainty, based on my education, training, and experience for designing a multitude of -- of parts of similar manufacturing processes to what is in this low-end firearm -- for a vehicle which has to meet federal regulations.

Hicks Dep. at 178:12-179:1 [Doc. 53-16]. Thus, Hicks plainly admits that he has no scientific support, either in the form of testing or otherwise, for the opinion that the purported defects he identifies manifest as a discharge with no trigger pull but simply believes this to be the case based on his supposed "experience," which, as discussed above, is entirely lacking with respect to firearm design and manufacturing, and the internal workings of a firearm, which are the sole subject of his opinion. *See Earley Info. Sci., Inc. v. Omega Eng'g, Inc.*, 575 F. Supp. 3d 242, 248 (D. Mass. 2021) ("Generic appeals to an expert's experience are no substitute for reliable principles and methods."); *Brown v. Wal-Mart Stores, Inc.*, 402 F. Supp. 2d 303, 308 (D. Me. 2005) ("[i]f the [expert] witness

is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts") (internal quotation marks and citation omitted). This is the definition of *ipse dixit*.

The Magistrate's focus on cases holding that physical testing is not a prerequisite is also misplaced, as these cases do not support the proposition that a hypothesis without *any* further testing or analysis satisfies Rule 702. In *Quilez-Velar v. Ox Bodies, Inc.*, for instance, the court held only that it would not adopt a bright-line rule that "an expert himself must have tested an alternative design." 823 F.3d 712, 719 (1st Cir. 2016), certified question answered, 198 D.P.R. 1079, 2017 TSPR 165, 98 P.R. Offic. Trans. 75 (Aug. 31, 2017). In addition, unlike Hicks, who did not conduct any calculations or force measurements, the expert in that case testified that although he did not perform physical testing, he tested his design using "stress calculations" and performed "photogrammetry analysis" using calculations performed by hand to test how his design would react upon impact." *Id.*

While the RAR notes that reliability is a flexible inquiry, it goes on to cite several factors which may be considered in conducting this inquiry but fails to consider that **not one of these factors weighs in favor of admissibility in this case:** Hicks has not done any testing, calculations, force measurements, computer modeling, replication, or any other scientific analysis to demonstrate that any of the alleged "defects" he identifies could allow the subject pistol to fire without a trigger pull.  Nor has he identified any studies, testing, or analysis performed by anyone else to support his theories. *See* Order, *Hilton v. Sig Sauer, Inc.*, No. 1:21-CV-00441-MSJ (June 8, 2023) at p. 10 [Doc. 53-21] ("The experts do not even point to any literature to demonstrate that their opinions are based on new applications of existing theories. To the Court's knowledge, Hicks'

9

and Villani's opinions are based on wholly novel theories that they expect the Court to simply take their word for."). Hicks has not identified a known error rate for his methodology, and there is no indication that anyone in the firearm design and manufacturing industry agrees that the "defects" he identifies even exist, much less that they could allow the P320 to fire without a trigger pull. *See id.* ("And finally—as already alluded to in analyzing the previous factors—[Hicks and Villani] have not demonstrated that there is a general acceptance of their respective theories in the engineering community.").

In sum, the RAR erroneously concludes that Hicks' "methodology" was sufficient despite the absence of testing or replication because it fails to consider that Hicks offers only a bare hypothesis unsupported by *any* kind of substantiation or validation in the form of testing, calculation, modeling, studies, or other objective information or scientific analysis. Although an expert's hypothesis might, under certain circumstances, be admissible without physical testing, Hicks' hypothesis is clearly not admissible here because it is not only untested and unproven, but lacks *any* indicia of reliability under the Rule 702 inquiry. As such, the Court should decline to adopt this portion of the RAR.

### III.    The RAR misapplies Rule 702 by finding that Hicks need not even consider the most obvious cause of the incident—an accidental trigger pull—because Plaintiff hired him to opine only on the "no trigger pull" theory.

The RAR acknowledges that Hicks did not even consider the possibility that Plaintiff's discharge was caused by an accidental trigger pull. The Magistrate determined that this failure did not impact the reliability of Hicks' opinions "since he has been hired to opine only as to the possibility of an uncommanded discharge." RAR at p. 14. First, the RAR incorrectly construes the scope of the opinion that Hicks has offered in this case. Hicks' opinion is not limited to the "possibility" that the P320 <u>can</u> discharge without a trigger pull. Hicks supplies the further opinion

10

that Plaintiff's pistol did discharge without a trigger pull and was the cause in fact of this incident. *See* Hicks Rpt. at p. 19 [Doc. 53-14] ("the striker became disengaged from the sear without Officer Green pulling the trigger") ("Combined with the misalignment of the parts, they were in a condition that both of these areas failed to prohibit the striker from moving forward, without the trigger being pulled, during the subject un-commanded discharge event.").

The RAR accepts that a discharge resulting from an accidental trigger pull is a possible theory of causation in this case but finds that this does not impact the admissibility of Hicks' opinions because he was only hired to look at discharge without a trigger pull theory, and Sig Sauer can simply introduce the "accidental trigger pull" theory at trial for the jury's consideration. *See* RAR at p. 14. While an expert need not eliminate every possible alternative cause of an injury, "[i]n order to satisfy Rule 702, the 'expert[s] should 'adequately account[ ] for obvious alternative explanations[ ].'" *Brown v. Saint-Gobain Performance Plastics Corp.*, No. 16-CV-242-JL, 2023 WL 9016496, at *9 (D.N.H. Dec. 29, 2023) (citing *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 87 (1st Cir. 2017)). Here, Hicks fails entirely to account for the most obvious alternative explanation: an accidental trigger pull. Even under the truncated scope of the Hicks opinion that the RAR confers, it erroneously concludes that Hicks satisfies the requirements of Rule 702 despite limiting his analysis to the one potential cause of the discharge Plaintiff's counsel asked him to consider while admittedly putting on blinders to other possible, indeed likely causes. Put simply, the "job description" provided to Hicks by Plaintiff's counsel, no matter now narrowed by the RAR, does not excuse the blatant deficiencies in his opinions or permit the admissibility of opinions which do not satisfy Rule 702.

Putting aside that Hicks has no basis to opine even as to the "possibility" that the P320 can fire without trigger actuation, Hicks' causation opinion is clearly inadmissible because Hicks

*assumed*, rather than analyzed, the cause of the incident. Permitting his testimony that Plaintiff's pistol fired without a trigger pull in this case is akin to allowing an expert to opine that an oven range spontaneously ignited to cause a house fire despite overwhelming evidence, *which the expert failed to even consider because it was not part of his scope of work*, that the fire was caused by someone turning the range on and forgetting to turn it off. Even if Hicks was "hired" by Plaintiff to opine only as to the possibility of a discharge without a trigger pull, that does not give him carte blanche permission to ignore an alternate cause that is supported by the record and instead testify only as to Plaintiff's preferred theory.

Sig Sauer submits that the Magistrate erred in concluding that any of Hicks' opinions are admissible. However, should the Court adopt any portion of the RAR, at minimum, Hicks should be limited to the opinion that the RAR vetted. Hicks' opinion should be limited as described in the RAR to opining as to the "possibility" of a discharge without a trigger pull and precluded from testifying that this was in fact the cause of the subject incident.

**IV.  The RAR excuses Hicks' lack of testing based on the incorrect assumptions that (1) testing was not feasible and (2) Hicks "based his opinions" on Sig Sauer's prior testing.**

The RAR simply parrots and accepts Hicks' incredible assertion that testing of his hypothesis is "impractical." *See* RAR at p. 13 n.3 ("Hicks has expressed that it is impractical to replicate the conditions that would allow for physical testing of his hypothesis."). Even a cursory look under the hood reveals that there are a multitude of tests that Hicks could have performed to test his hypothesis, a conclusion that is supported by Hicks' own expert report and deposition testimony. Hicks opines that, "[d]ue to the minimal amount of contact between the two components (sear and striker), any vibration, inertia, or jostling of the firearm can cause the striker to be released." Hicks Rpt. at p. 20 [Doc. 53-14]. Despite his own assertion that the sear-striker

interface is "precarious" and that the striker can easily be released upon *any* vibration, inertia, or jostling, Hicks failed to perform a single test involving any amount of vibration, inertia, or jostling to attempt to cause the striker to be released. *See* Hicks Dep. at 47:21-48:5 [Doc. 53-16]. Hicks claims that his failure to do drop testing, abusive handling testing, or any other testing that would put a P320, whether new or used, through abusive handling circumstances is justified not because this type of standard industry testing is not feasible (it obviously is), but because he "[doesn't] know how many cycles of those tests it would take before it would represent what's happening in the field." *Id.* at 47:21-48:5. Based on Hicks' sworn testimony, he refuses to test his hypothesis because he claims there are too many unknown variables to test effectively—i.e., too great a risk of failing to recreate the conditions he believes he needs to replicate a discharge without a trigger pull. This purported justification does not even resemble a legitimate showing of "impracticality."

The RAR further concludes, "To the extent that Sig Sauer suggests that for a finding of reliability, Hicks had to basically recreate the specific scenario that would in fact cause an uncommanded discharge, I find such argument to be meritless." RAR at p. 13 n.3. This statement not only misrepresents Sig Sauer's position, but turns it on its head. As is clear from Hicks' own testimony, it is Hicks, not Sig Sauer, who insists that it is not worth even attempting to test his hypothesis in any manner absent a guarantee that the testing conditions would perfectly replicate the real-world conditions he believes are likely to cause the pistol to discharge without a trigger pull. *See* Hicks Dep. at 48 [Doc. 53-16] ("It's not practical to be able to develop a test…that would represent real life usage."). By deliberately setting the bar for "practicality" so high that it would be out of reach for any engineer, Hicks easily excuses himself from so much as attempting any testing. Contrary to the RAR's finding, Sig Sauer does not suggest that Hicks had to "basically

13

recreate" any "specific scenario," but rather, argues that Hicks' hypothesis is unreliable because, among other reasons, he failed to test it under **any scenario**.

The RAR also notes that testing is not a requirement especially in situations "where, as here, the expert based his opinion in part on tests previously performed by Sig Sauer such as rough handling and vibrations tests." RAR at p. 6. In this respect, the RAR completely misapprehends the Sig Sauer testing on which Hicks purportedly "relies." To be clear, Hicks did not, nor could he possibly have, based his opinions on tests previously performed by Sig Sauer, as the tests to which Hicks refers (performed by the engineering firm Dayton T. Brown, Inc.), in no way support, but rather, directly undermine, Hicks' opinions. Specifically, these tests *demonstrate that the P320 will **no**t fire due to vibration or jostling without trigger actuation.* See Dayton Brown Test Rpt. [Doc. 72-4]; Hicks Dep. at 137:23-138:6 [Doc. 53-16] (Q…The Dayton Brown testing…which showed that at least for these ten P320 pistols, there were no discharges when subject to military type standards for vibration, rough handling, loose cargo, correct? A. For those specific tests, that's correct."). That Hicks is aware of testing which *undercuts* his hypothesis but points to that same testing to excuse his own failure to perform any testing is nonsensical, and the RAR's adoption of that argument was clearly in error.

## CONCLUSION

For the foregoing reasons, Sig Sauer requests that the Court decline to adopt the Magistrate's February 27, 2024 Report and Recommendation in its entirety and enter an Order granting Sig Sauer' motion *in limine* to exclude the testimony and opinions of Plaintiff's expert, Timothy Hicks.

**RESPECTFULLY SUBMITTED**,

In Guaynabo, Puerto Rico on this 12th day of March, 2024

                                                **Marichal, Hernández, Santiago & Juarbe, LLC**
Edificio Triple S Plaza
1510 Ave FD Roosevelt, Suite 9B1
Guaynabo, PR 00968

PO Box 190095
San Juan, PR 00919-0095
Tel 787.753.1565
Fax 787.763.1704

*s/Miguel A. Rangel Rosas*
**Miguel A. Rangel-Rosas, Esq.**
USDC Bar No.: 218601
E-Mail: mrangel@mhlex.com

**Luis F. Juarbe-Jiminez, Esq.**
USDC Bar No.,: 212714
E-Mail: lfjuarbe@mhlex.com

Kristen E. Dennison
Brian Keith Gibson
Robert L. Joyce
**LITTLETON JOYCE UGHETTA & KELLY, LLP**

## CERTIFICATE OF SERVICE

We hereby certify that on March 12, 2024, we electronically filed the foregoing document with the CM/ECF system which will send notification of such filing to all counsel who have filed appearances in this case.

**Marichal, Hernández, Santiago & Juarbe, LLC**
Edificio Triple S Plaza
1510 Ave FD Roosevelt, Suite 9B1
Guaynabo, PR 00968

PO Box 190095
San Juan, PR 00919-0095
Tel 787.753.1565
Fax 787.763.1704

*s/Miguel A. Rangel Rosas*
**Miguel A. Rangel-Rosas, Esq.**
USDC Bar No.:  218601
E-Mail: mrangel@mhlex.com

**Luis F. Juarbe-Jiminez, Esq.**
USDC Bar No.,: 212714
E-Mail: lfjuarbe@mhlex.com

Kristen E. Dennison
Brian Keith Gibson
Robert L. Joyce
**LITTLETON JOYCE UGHETTA & KELLY, LLP**
4 Manhattanville Road, Suite 202
Purchase, NY 10577
Tel: (914) 417-3400
Fax: (914) 417-3401
kristen.dennison@littletonpark.com
keith.gibson@littletonpark.com
robert.joyce@littletonpark.com